**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DOUGLAS MANNING,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**GOVERNOR PHILIP D. MURPHY,**<br><br>        **Defendant.** | Civil Action No.: 24-10445 (ES) (JBC)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

      Before the Court is defendant Governor Philip D. Murphy's ("Governor Murphy") motion to dismiss pro se plaintiff Douglas Manning's ("Plaintiff") First Amended Complaint. (D.E. No. 1-2 ("FAC")).[1] (D.E. No. 6 ("Motion to Dismiss" or "Mot. to Dismiss")). Plaintiff has not filed an explicit response or opposition to the Motion to Dismiss. However, Plaintiff has filed several submissions docketed as letters. (D.E. No. 4 ("December 4, 2024 Letter" or "Dec. 4, 2024 Letter"); D.E. No. 5 ("Second December 4, 2024 Letter" or "Second Dec. 4, 2024 Letter"); D.E. No. 8 ("November 12, 2024 Letter" or "Nov. 12, 2024 Letter"); D.E. No. 9 ("January 16, 2025 Letter" or "Jan. 16, 2025 Letter"); D.E. No. 13 ("February 28, 2025 Letter" or "Feb. 28, 2025 Letter")). The Clerk of Court has also docketed a submission from Plaintiff as a "First Petition for post conviction relief." (D.E. No. 18 ("First Petition for Post Conviction Relief")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **GRANTS** the Motion to Dismiss, **DENIES** the First Petition for Post Conviction Relief and **DENIES** the requests for relief

---

[1] The First Amended Complaint is attached to Defendant's Notice of Removal, (D.E. No. 1) ("Not. Of Removal") as Exhibit A.

set forth in the December 4, 2024, Second December 4, 2024, November 12, 2024, January 16, 2025, and February 28, 2025 Letters.

## I.      BACKGROUND

Plaintiff is currently confined as a civilly committed "sexually violent predator" at the Special Treatment Unit ("STU") in the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey.[2] (*See* FAC ¶ 13; D.E. No. 6-3, Ex. B ("Civ. Commitment Order") at 2–3). On June 5, 2024, Plaintiff commenced this action by filing a complaint in the Superior Court of New Jersey, Law Division, Middlesex County against Governor Murphy. (Not. of Removal ¶ 2). Plaintiff filed his FAC in state court on June 24, 2024. (*Id.*). It is undisputed that the FAC is the operative pleading in this matter.

The caption and allegations of the FAC do not explicitly refer to Governor Murphy, but Plaintiff does refer to "Government such as Philip D. Murphy Defendant" in the accompanying cover letter. (Not. of Removal, Ex. A at 1). The caption of the FAC lists "Govenment [sic] State of N.J.," "Adult Diagnostic treatment care," "East Jersey State Prison" ("EJSP"), and "N.J. Dept of Correction" ("NJDOC") as defendants. (FAC at 2 (quoted verbatim)). In addition, in the "Parties" section of the pleading, Plaintiff names the following four "Defendants" (recited herein verbatim): (i) "Defendant John Doe is a Commissioner Correction Custody employed by State of New Jersey Department of Corrections;" (ii) "Defendant John Doe is a Administrator, E.J.S.P. Correction Custody employed by State of New Jersey Department of Correction;" (iii) "Defendant Raymond R is a dministrator adult diagnostic treatment care, employed by the N.J. dept of correction;" and (iv) "Defendant Govenment is a State of New Jersey employed by the State of New Jersey, N.J. Dept of Correction." (FAC ¶¶ 4–7). Plaintiff alleges that the four defendants

---

[2]      The STU is a facility in which "sexually violent predators" are held pursuant to the New Jersey Sexually Violent Predator Act of 1998. N.J. Stat. Ann. § 30:4-27.24.

owe him a specific responsibility to safeguard his rights, privileges and immunities from unreasonable abridgement and that they thereby have breached their responsibilities to Plaintiff. (*Id.*). As to "Raymond R," Plaintiff additionally alleges that he had supervisory responsibility over NJDOC and EJSP and failed to intervene to stop Plaintiff's imprisonment and the unlawful use of force by NJDOC, EJSP, and "Defendant Government State of New Jersey." (*Id.* ¶ 6).

According to the FAC, Plaintiff is bringing a civil rights action under the New Jersey Civil Rights Act ("NJCRA") seeking a declaratory judgment as to his right to be free from cruel and unusual punishment in the form of false imprisonment and the denial of due process and equal protection of law as mandated by the New Jersey Constitution. (FAC ¶¶ 1–2). He also seeks compensatory and punitive damages. (*Id.*).

Although the substantive allegations in the FAC are difficult to decipher, Plaintiff apparently alleges that, on April 5, 2024, he was transported by the NJDOC from EJSP to ADTC. (*Id.* ¶ 9). At EJSP, Plaintiff was stripped searched and placed in handcuffs and an ankle restraint. (*Id.*). When the van arrived, the officer read to Plaintiff a "release paper" indicating that his "max date" had expired (or would soon expire) and that he was to be set free. (*Id.* ("officer read to me release paper expired max date to be set free.")). However, instead of being released, and despite his protests, Plaintiff was subjected to physical "mistreat[ment]" and "unwarranted imprisonment." (*Id.* ¶¶ 9–10).

On the ride to ADTC, Plaintiff's hands were "brutally" handcuffed behind his back and he remained in the ankle restraint, causing him "excruciating pain." (*Id.* ¶ 10).

"All defendant[s] [began] to violate [Plaintiff's] rights [by] repeatedly mistreat[ing] and falsely imprison[ing him]." (*Id.*). Plaintiff indicates that he was "denied being" released from confinement even though it reasonably should have been known that his "release paper expiration

date" was April 7, 2024.  (*Id.*).

Plaintiff apparently alleges that, upon his arrival at ADTC, the handcuffs were removed and he was stripped searched.  (*Id.*).  "All of the defendants including Transportation N.J. Dept of Correction ignored" Plaintiff's suffering and psychological pressure resulting from his false imprisonment, being placed in the back of the van in handcuffs, and "unsanitary and inhumane" conditions at ADTC, including being held in isolation without showers, phone calls, kiosk time, and adequate pain relief, and privacy.  (*Id.* ¶ 11).

Instead of releasing Plaintiff from confinement, "Administrator (NJDOC)" authorized Plaintiff to be handcuffed with his hands behind his back and escorted to the "general population" Section in the STU.  (*Id.*).  "Plaintiff was walk to unlock door."  (*Id.* (quoted verbatim)).  The handcuffs were removed while he was "standing in the cell" in the STU.  (*Id.*).  Plaintiff states (verbatim): "No violence on Friday April 05, 2024 until April 10, 2024.  Plaintiff remain in isolated imprisonment confinement in General Population completely isolated."  (*Id.* ("While close cell door without being free from confinement.")).  Plaintiff asserts that "[a]ll defendants misconduct" violated his rights, that Defendants made no effort to intervene or "call the date of release max date" and that they reasonably should have known his constitutional rights were being violated. (*Id.*).  Furthermore, Plaintiff states the following:  "Defendant Attorney General mandatory report permitted 'East Jersey State Prison, and Adult diagnostic treatment care, Unprovoked imprisonment after release expired Date Civil Disobedience of Plaintiff to continue in confinement until rehabilitation statutory release date."  (*Id.* (quoted verbatim)).

Plaintiff reiterates that he was "denied being free on release date," held in the back of a van during the ride to ADTC from EJSP; and "[t]he imprisonment holding in confinement isolated I received hardships Permanent Lost of Right to Freedom, Suffering awaiting change intentional

mistreatment the violation committed to Permitted the wrong." (*Id.* ¶ 12 (quoted verbatim)).

The FAC sets forth six counts for relief: (i) "[t]he mistreated imprisonment use of unlawful force by defendants East Jersey State Prison" violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution and the NJCRA; (ii) EJSP's conduct violated his right to be free from cruel and unusual punishment under Article I, Section 12 of the New Jersey Constitution; (iii) "[]the mistreated imprisonment use of unlawful force by Defendant Adult diagnostic Treatment Care" violated the Eighth and the Fourteenth Amendment; (iv) this conduct by "adult diagnostic treatment care" violated Plaintiff's right to be free from cruel and unusual punishment under the New Jersey Constitution; (v) "[t]he mistreated omission of defendant N.J. Dept of Correction to prevent continued and further civil disobedience to Plaintiff by the imprisonment inflicted by the unlawful use of force by [EJSP] and adult diagnostic treatment care under the direct supervision of defendant Government State of New Jersey caused the Plaintiff to suffer avoidable Pain and Suffering" in violation of the Eighth Amendment; and (vi) "the mistreated omissions of defendant Government State of New Jersey and deliberate indifference to pain and suffering of Plaintiff inflicted by defendant [EJSP] and adult diagnostic treatment care under the direct supervision of defendant Government State of New Jersey" violated Plaintiff's right to be free from cruel and unusual punishment under Article I, Section 12 of the New Jersey Constitution. (*Id.* ¶¶ 13–18).

Plaintiff requests a declaratory judgment that "defendant acts and omission as complained of herein, denied Plaintiff his right" as guaranteed by the Eighth Amendment of the United States Constitution and Article I, Section 12 of the New Jersey Constitution, damages against "defendant" jointly and severally in the amount of between $1 million and $10 million, and other such relief that the Court may deem just, proper, and equitable. (*Id.* at 9).

Plaintiff's FAC was served upon Governor Murphy on October 11, 2024. (Not. of Removal ¶ 8). On November 12, 2024, Governor Murphy removed this action, and, on December 18, 2204, he moved to dismiss the FAC. (*See* Not. of Removal; Mot. to Dismiss).

Plaintiff has submitted several filings docketed as letters. Like his FAC, Plaintiff's other submissions are difficult to understand.

The first letter, dated December 4, 2024, was entitled an "Answer," and it referred to several cases Plaintiff had filed including the present matter (i.e., 2:20-cv-14240; 2:23-cv-01623; 2:23-cv-00279; 2:24-cv-10445; 2:24-cv-06144; 2:24-cv-08795). (Dec. 4, 2024 Letter at 1). The body of this "Answer" consisted of one sentence stating that "[t]he following case[s] are related" to unspecified violations of the United States Constitution, laws, or treaties; civil rights actions; federal habeas, appellate, and post-conviction proceedings; serious bodily injury; the undermining of the adversarial process; and an obvious conflict of interest in the IFP affidavit. (*Id.*).

In the Second December 4, 2024 Letter, Plaintiff apparently asked the Clerk to "take notice" that the Court dismissed without prejudice a proceeding on November 5, 2024. (Second Dec. 4, 2024 Letter at 1). In the heading, he referenced "Manning v. Platkin[,] Docket No. 2:24-cv-08795, Hon. Brian R. Martinotti." (*Id.*). Plaintiff indicated that the Defendant is "a[n] Attorney General of New Jersey;" summary judgment should be reversed, and the amended petition for relief under 28 U.S.C. § 2241 "derive[s]" from his unwarranted imprisonment at EJSP and, after his April 7, 2024 release, he became a pretrial detainee and non-prisoner and was civilly committed at the STU. (*Id.*). Plaintiff asserted that such circumstances violated the United States Constitution, and he asks the Court to vacate his sentence and appoint counsel. (*Id.*). Attached to the correspondence was a notice of motion for an extension of time as well as a copy of the November 25, 2024 letter to Plaintiff from Governor Murphy's counsel asking for an extension of

time to respond to respond to the FAC (which the Honorable James B. Clark, U.S.M.J. granted on December 2, 2024 (D.E. No. 3)). (Dec. 4, 2024 Letter at 2–3).

The November 12, 2024 Letter (which was not docketed until January 10, 2025) was captioned as a "Motion for Recon[s]deration," "Affirmance or Recon[s]ideration," and "Notice of Removal." (Nov. 12, 2024 Letter at 1). Plaintiff requested reversal of the grant of summary judgment and for the case to be remanded to the District Court. (*Id.*). Plaintiff attached to his filing: (i) a notice of motion requesting an order to vacate, set aside, or correct the sentence; (ii) a letter sent to the New Jersey Superior Court in the removed action stating that he wishes to file the "attach[ed] incident;" and (iii) a state court dismissal notice in the removed action. (D.E. No. 8-1 at 1–3).

Like the first December 4, 2024 Letter, Plaintiff's January 16, 2025 Letter is labeled an "Answer." (Jan. 16, 2025 Letter at 1). Plaintiff requested reconsideration and appointment of counsel, evidently challenged his underlying state court conviction, and alleged a double jeopardy violation, false imprisonment, and unlawful restraint. (*Id.*). He attached a summary New Jersey Superior Court docket report for the removed action. (*Id.* at 2).

On February 19, 2025, Magistrate Judge Clark entered a letter order staying all discovery deadlines pending the outcome of Governor Murphy's Motion to Dismiss. (D.E. No. 12). In his February 28, 2025 Letter, Plaintiff requested that the Court enter default judgment because of unspecified discovery violations, stated that he has suffered non-monetary injuries such as pain and suffering, and noted that "state removal of a case waives its Eleventh Amendment immunity for act[s] done willfully or maliciously with intent to harm [or] with a corrupt motive or in bad faith." (Feb. 28, 2025 Letter at 1).

On July 22, 2025, the Clerk of Court docketed Plaintiff's First Petition for Post Conviction

Relief. (First Pet. for Post Conviction Relief). This filing consisted of a copy of a brief submitted in support of a petition for post conviction relief that was filed in the Superior Court of New Jersey, Essex County. (*Id.* at 2–20). Plaintiff "list[ed]" this state court petition to show "why [the FAC] should not be dismissed" and evidently claims that no brief has been filed in response to his FAC and other supplemental filings. (*Id.* at 1). By Order dated July 23, 2025, (D.E. No. 19), Magistrate Judge Clark denied Plaintiff's motions for appointment of counsel, (D.E. No. 15), and for reconsideration of the order staying discovery. (D.E. No. 16).

## II.   LEGAL STANDARD

A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). A complaint that merely offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original( (quoting *Twombly*, 550 U.S. at 555, 557).

"Generally, when deciding a motion to dismiss, only the complaint can be considered. But, 'a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.'" *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

While courts liberally construe *pro se* pleadings, *pro se* litigants still are required to allege sufficient facts to support a claim and to comply with the pleading requirements of Rule 8. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (per curiam).

### III. DISCUSSION

The Court liberally construes Plaintiff's *pro se* FAC as alleging claims against Governor Murphy in both his official capacity (for damages and declaratory relief) and his individual capacity (for damages) under the NJCRA, N.J. Stat. Ann. § 10:6-2(c), and 42 U.S.C. § 1983 ("Section 1983"). To state a claim for relief under Section 1983, a plaintiff must allege: (i) that the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived the plaintiff of a federally secured right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). The NJCRA is New Jersey's analogue to a federal civil rights claim under § 1983, and a claim under the NJCRA is generally construed identically to an equivalent federal claim and is subject to the same defenses. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417,

9

443–44 (D.N.J. 2011). As such, although this Court explicitly discusses Plaintiffs' civil rights claims in relation to Section 1983, its reasoning and conclusions apply equally to Plaintiff's equivalent NJCRA claims.

Governor Murphy argues that the claims against him should be dismissed because Plaintiff fails to allege the Governor's personal involvement in any constitutional violation and none of the claims are directed against the Governor himself. (Def. Mov. Br. at 6–7). He further contends that the claims should be dismissed because he is not a "person" under Section 1983 and the NJCRA and the claims are barred by sovereign immunity. (*Id.* at 7–10). Finally, Governor Murphy asserts that the claims seeking Plaintiff's release and requesting damages in connection with his civil commitment are barred by *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994). (Def. Mov. Br. at 10–12).

### A.     Official-Capacity Claims Against Governor Murphy

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (emphasis added). Accordingly, to be held liable under Section 1983, a defendant must be a "person" within the meaning of the statute. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 71 (1989).

Furthermore, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State." U.S. Const. amend. XI. The reach of the Eleventh Amendment has been extended to "suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court." *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The Eleventh Amendment precludes claims against the state for damages, as well as claims for injunctive or declaratory relief, and generally extends to bar suits against state officers acting in their official capacity. *See Cory v. White*, 457 U.S. 85, 90–91 (1982); *Pa. Fed'n of Sportsmen Clubs v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

Nevertheless, there are three primary exceptions to Eleventh Amendment immunity: (i) waiver by the state, (ii) congressional abrogation, and (iii) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. *See Garden State Elec. Inspection Servs. Inc. v. Levin,* 144 F. App'x 247, 252 (3d Cir. 2005).

Plaintiff's official-capacity Section 1983 and NJCRA claims for damages against Governor Murphy are dismissed *with prejudice*. Plaintiff indicates that Governor Murphy's waived immunity by removing his case to federal court. (Feb. 28, 2025 Letter at 1). However, state sovereign immunity extends to more than merely immunity from suit in federal court but also encompasses immunity from liability. *See Redo* v. *New Jersey*, No. 23-21424, 2024 WL 939721, at *2 (D.N.J. Mar. 4, 2024). "Because these two components are distinct, a state's waiver of one does not affect its enjoyment of the other." *Id.* (quoting *Lombardo*, 540 F.3d at 198). Accordingly, "[i]t is well-established that voluntary removal waives a state's immunity from suit in a federal forum, *Lapides v. Board of Regents of the University of Georgia, et al.*, 535 U.S. 613, 620–21 (2002), but not the defenses the state or state agency would have enjoyed in state court, including immunity from liability. [*Lombardo*, 540 F.3d at 198]." *Barber v. New Jersey*, No. 23-3202, 2024 WL 4563911, at *5 (D.N.J. Oct. 24, 2024); *see also Redo*, 2024 WL 939721, at *2 (same). Any

11

"waiver of immunity from suit in federal court does not preclude [Governor Murphy] from asserting that [he] is not a 'person' subject to suit under § 1983." *Redo*, 2024 WL 939721, at *2 (citing *Didiano v. Balicki*, No. 10-4883, 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011), *aff'd*, 488 F. App'x 634 (3d Cir. 2012); *Davis v. Yates*, No. 15-6943, 2016 WL 5508809, at *4 (D.N.J. Sept. 27, 2016))).

As Governor Murphy acknowledges, the *Ex Parte Young* decision provides an exception to immunity where a plaintiff sues an individual state officer for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law. (Def. Mov. Br. at 9 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Young*, 209 U.S. at 159–60). This exception requires the Court to undertake a straightforward inquiry into whether the plaintiff alleges an ongoing violation of federal law and whether he "seeks relief properly characterized as prospective." *Sexton v. N.J. Dep't of Corr.*, No. 21-20404, 2024 WL 4615763, at *16 (D.N.J. Oct. 30, 2024) (quoting *Del. River Jt. Toll Bridge Comm'n v. Sec'y Pa. Dep't of Labor & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021)). Here, Plaintiff seeks a declaratory judgment that "[D]efendant['s] acts and omissions" denied him his rights as guaranteed by the Eighth Amendment to the United States Constitution and Article 1, Section 12 of the New Jersey Constitution. (FAC at 9; *see also id.* ¶ 1).

Plaintiff's claims generally implicate either (i) the fact of his confinement, or "false imprisonment;" or (ii) how he has been treated during this "false imprisonment," *i.e.*, that he was subjected to inhumane conditions of confinement. To the extent that Plaintiff brings official-

capacity Section 1983 claims for declaratory relief against Governor Murphy challenging his continuing civil confinement after his "expired max date," he alleges an ongoing violation of federal law and appropriately seeks prospective relief under the *Young* exception. The Court thereby denies Governor Murphy's Motion to Dismiss such "continuing confinement" claims on immunity-related grounds (although, for the reasons stated in Section III.C, *infra*, the Court agrees with Governor Murphy that such claims must be dismissed under the *Heck/Preiser* doctrine).

However, to the extent Plaintiff complains that he was mistreated while being transported from EJSP to the ADTC and at the ADTC *before* he was moved to the "General Population" section of the STU, Plaintiff does not plausibly allege an *ongoing* violation of federal law or seek *prospective* relief. (FAC ¶¶ 9–11); *Abdul-Aziz v. Lanigan*, No. 17-2806, 2018 WL 1069420, at *5 (D.N.J. Feb. 22, 2018) (stating that the *Young* exception is read narrowly and does not permit claims for declaratory judgment as to past acts). Plaintiff does not allege any non-conclusory facts indicating that the allegedly painful physical restraints (e.g., "handcuffing" his hands behind his back) used in connection with his transfers, or the "unsanitary and inhumane" conditions in ADTC (e.g., the denial of showers, phone calls, and kiosk time) have persisted, or are likely to recur, in the "Special Treatment Unit Facility (General Population)." *(*FAC ¶¶ 9–11). In fact, Plaintiff appears to admit that the handcuffs "were removed" when he was "inside [the STU cell]." (*Id.* ¶ 11). At most, Plaintiff states in passing that he "remain [sic] in isolated imprisonment" and "complete[ly] isolated," but he also indicates in the same sentence that he is being held in "General Population." (*Id.*). Accordingly, the Court dismisses *without prejudice* the official-capacity Section 1983 claims for declaratory relief regarding the conditions of confinement against Governor Murphy.

Furthermore, the *Young* exception does not apply to claims for prospective relief for

ongoing violations of *state* law. *See Borowski v. Kean Univ.*, No. 20-5172, 2024 WL 658262, at *5 (D.N.J. Feb. 15, 2024) ("However, '[t]he Eleventh Amendment strictly bars suits in federal court against state agencies or state officials for violations of state law, and the *Ex Parte Young* doctrine is inapplicable to such claims.'" (alteration in original) (quoting *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 415 (M.D. Pa. 2008)). Accordingly, Plaintiff's official-capacity NJCRA claims for declaratory relief against Governor Murphy are dismissed *with prejudice* because Governor Murphy is not a "person" under the state statute for purposes of such claims. *See Will*, 491 U.S. at 71 & n.10.

### B. Plaintiff's Individual-Capacity Claims Against Governor Murphy

A civil rights plaintiff must plausibly establish that each named defendant was personally involved in the alleged constitutional violation to state an individual-capacity claim for monetary relief. *See Parkell v. Danberg*, 833 F.3d 313, 330–32 (3d Cir. 2016); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). A "showing of direct responsibility" by the defendant is required, and the case law eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights." *Rizzo* v. *Goode*, 423 U.S. 362, 376–77 (1976). Accordingly, the plaintiff must plead facts indicating that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 678.

"A supervisor's '[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.'" *McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *2 (D.N.J. Jul. 29, 2024) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

"Alternatively, a plaintiff seeking to show personal involvement for a supervisor may plead

facts which show that the alleged constitutional violation is the result of a policy, practice, or custom put into effect by the supervisor." *McCoy*, 2024 WL 3580662, at *2 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)). Liability arises if the official, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (alteration in original) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). A single incident is generally insufficient to establish the existence of a policy or custom. *See Reed v. Jersey City*, No. 21-3921, 2022 WL 1664621, at *7 (D.N.J. May 24, 2022).

In addition, a plaintiff may seek to hold a supervisor liable for failing to train or supervise his or her subordinates. "Failure to" claims constitute a subcategory of policy or practice liability. *See Barkes*, 766 F.3d at 316–17. "[A] plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances." *Best v. Hicks*, No. 22-6911, 2024 WL 4891774, at *6 (D.N.J. Nov. 26, 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Plaintiff does not allege specific facts raising a reasonable inference that Governor Murphy was personally involved in the alleged wrongs. In fact, Governor Murphy is not mentioned by name in the caption or the body of the FAC. Plaintiff alleges, inter alia, that "Defendant Govenment is a State of New Jersey employed by the State of New Jersey, N.J. Dept of Correction as such he owes a specific responsibility to the Plaintiff to safeguard his rights, privileges and immunities from unreasonable abridgement" and "Defendant Government has breached his responsibility." (FAC ¶ 7 (quoted verbatim). Liberally construing these allegations as directed

15

against the Governor of the State of New Jersey, Plaintiff nonetheless does not provide any factual content plausibly indicating that Governor Murphy either personally participated in, or knew of and acquiesced in, the allegedly unconstitutional conduct; the alleged injuries were the result of a custom or practice creating an unreasonable risk of harm to which Governor Murphy was deliberately indifferent, or the existence of a prior pattern of similar incidents and circumstances resulting from flaws in Governor Murphy's training, discipline, or supervision.

Plaintiff also baldly alleges that all Defendants violated his constitutional rights, e.g., "All defendants[s] commenced to violate [his] right[s] by repeatedly mistreat[ing him]." (*Id.* ¶ 10). "A plaintiff may not plead personal involvement by way of group pleading – *i.e.*, naming a litany of defendants all of whom held different positions and were presumably involved in different ways and alleging wrongs as to each member of this group of Defendants without specifically pleading how each was involved." *McCoy*, 2024 WL 3580662, at *3 (citing *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2024); *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2023)); *see also Cheng v. Byrd*, No. 23-5349, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024) ("A plaintiff cannot refer to all defendants, 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying '*which* defendants engaged in what wrongful conduct.'" (quoting *Falat*, 2013 WL 1163751, at *3)).

Accordingly, the Court dismisses *without prejudice* Plaintiff's individual-capacity Section 1983 and NJCRA claims for damages against Governor Murphy.

    **C.**    **The *Heck*/*Preiser* Bar**

To the extent that Plaintiff seeks a declaratory judgment as to his right to be free of his "false imprisonment" at the STU after the completion of his criminal sentence, or requests damages

16

based on his civil commitment (*see* FAC ¶¶ 1, 9), he cannot proceed under Section 1983 or the NJCRA at this time. Plaintiff's "claims are not cognizable under § 1983 at this time because his civil commitment order has not been invalidated by an appropriate tribunal, and a favorable outcome in a § 1983 action would necessarily and improperly imply the invalidity of his confinement at the STU." *Banda v. Adams*, 674 F. App'x 181, 184 (3d Cir. 2017) (per curiam) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 80–82 (2005); *Heck*, 512 U.S. at 486–87)); (Civ. Commitment Order at 2–3). "The Supreme Court has thus expressly held that a prisoner's civil rights suit 'is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit [including] internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of [his] confinement or its duration.'" *Cruz v. Warden, FCI Fort Dix*, No. 23-46789, 2023 WL 5994701, at *2 (D.N.J. Sept. 14, 2023) (quoting *Razzoli v. Director, Bureau of Prisons*, 293 F. App'x 852, 856–57 (3d Cir. 2008)); *see also Sarboukh v. Murphy,* No. 22-1622, 2022 WL 3357921, at *2 (D.N.J. Aug. 12, 2022) ("Although a civil committee may use § 1983 to raise challenges to state commitment laws which may result in his receiving a new commitment hearing, he may not use § 1983 to raise a challenge which would necessarily result in either his release or a finding which implies the invalidity of his continued commitment." (citation omitted)).

Accordingly, Plaintiff's Section 1983 and NJCRA claims against Governor Murphy seeking damages and declaratory relief with respect to his alleged "false imprisonment" are dismissed *without prejudice* to refiling if his civil commitment order is invalidated.

### D. Plaintiff's Letters and Pending Motion

Plaintiff has filed a Petition for Post for Post Conviction Relief, (D.E. No. 18), as well as several letters that are difficult to decipher but appear to: (i) allege that the various cases he has

17

filed in this District are related to unspecified violations of the United States Constitution, laws, or treaties; civil rights actions; federal habeas, appellate, and post-conviction proceedings; serious bodily injury; the undermining of the adversarial process; and a conflict of interest in the IFP affidavit (Dec. 4, 2024 Letter at 1); (ii) request relief from the dismissal of his habeas petition (Second Dec. 4, 2024 Letter at 1); (iii) request reconsideration and ask that the Court remand this case to "the District Court" (Nov. 12, 2024 Letter at 1); (iv) ask for reconsideration and appointment of counsel, attacks his underlying state court conviction, and allege a double jeopardy violation, false imprisonment, and unlawful restraint (Jan. 16, 2025 Letter at 1); and (v) request entry of default judgment as a sanction for undisclosed discovery violations (Feb. 28, 2025 letter at 1).

To the extent that Plaintiff seeks to obtain federal habeas relief, or to invalidate his prior criminal conviction or his civil commitment, he is barred from doing so in the present action for the reasons stated in Section III.C. To the extent Plaintiff's various filings could be construed as attempts to supplement his FAC, such "piecemeal attempts" to amend the operative pleading are "procedurally improper." *Stevens v. Mercer Cnty. Corr. Ctr.*, No. 22-1306, 2024 WL 404946, at *1 (D.N.J. Feb. 2, 2024) (citing *Lewis v. Sessions*, No. 17-5475, 2017 WL 7313822, at *2 (D.N.J. Nov. 3, 2017)). With regard to his request for sanctions, Plaintiff does not identify any specific discovery violations that Governor Murphy committed and, in fact, discovery has been stayed in this case. (D.E. No. 12). With respect to Plaintiff's informal request for appointment of counsel, the Court must make a threshold determination as to whether his claims have facial merit. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Plaintiff has not met that threshold requirement because he has failed to state a plausible claim for relief against Governor Murphy. [3]

---

[3] The Court notes that, by Order dated July 23, 2025, (D.E. No. 20), Judge Clark denied Plaintiff's subsequent, formal motion for appointment of pro bono counsel. (D.E. No. 19).

Accordingly, the Court denies Plaintiff's Request for Post Conviction Relief as well as the requests for relief set forth in his December 4, 2024, Second December 4, 2024, November 12, 2024, January 16, 2025, and February 28, 2025 Letters.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Governor Murphy's Motion to Dismiss, **DENIES** Plaintiff's First Petition for Post Conviction Relief, and **DENIES** the requests for relief in Plaintiff's December 4, 2024, Second December 4, 2024, November 12, 2024, January 16, 2025, and February 28, 2025 Letters. Plaintiff's claims against Governor Murphy are **DISMISSED** *with prejudice* in part and **DISMISSED** *without prejudice* in part. Specifically, the official-capacity Section 1983 and NJCRA claims for damages, and the official-capacity NJCRA claims for declaratory relief, are **DISMISSED** *with prejudice* because, for purposes of such claims, Governor Murphy is not a "person" under the respective federal and state statutes. The official-capacity Section 1983 claims for declaratory relief regarding the conditions of confinement are **DISMISSED** *without prejudice* because Plaintiff does not plausibly allege an ongoing violation of federal law under the *Young* doctrine. The individual-capacity Section 1983 and NJCRA claims for damages are **DISMISSED** *without prejudice* on the grounds that Plaintiff does not allege sufficient facts to satisfy the personal involvement requirement. Finally, the Section 1983 and NJCRA claims seeking damages and declaratory relief with respect to Plaintiff's alleged "false imprisonment" are **DISMISSED** *without prejudice* to refiling if Plaintiff's civil commitment order is invalidated.

Plaintiff may submit a second amended complaint within 30 days if he can cure the deficiencies identified in this Opinion.

An appropriate order follows.

**Dated: September 30, 2025**

                                                                                     s/ Esther Salas
                                                                                     **Esther Salas, U.S.D.J.**